PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA  92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff and the putative class

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL KEARNEY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VISION SERVICE PLAN, a California entity, d/b/a WWW.CHOOSEVSP.COM,<br><br>Defendant. | No. 5:25-cv-321<br><br>**CLASS ACTION COMPLAINT FOR: VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT ("CIPA)** |

## I.    INTRODUCTION

1.    Californians increasingly conduct their lives and activities over the internet, sharing often sensitive personal information with companies by using company websites rather than landline telephones.

2.    Defendant created its own online presence at **choosevsp.com** (the "Website") to communicate with potential customers, encouraging engagement with this electronic medium – Defendant's Website -- as an alternative to the telephonic or in-person interaction.  Defendant did this to enable potential customers to obtain information from and about Defendant's insurance products, and to enable Defendant to elicit information from potential customers about their specific needs and desires.

3.    Defendant well understands that its Website is a means to communicate privately with potential customers – a consumer expectation that is not only reasonable, but actively nurtured by Defendant.  Indeed, Defendant assures visitors that ***"[w]e have implemented physical, electronic, and administrative procedures in an attempt to safeguard and prevent unauthorized access and maintain data security of the information we collect."***  *See*  https://www.vsp.com/legal/privacy-statement  (last accessed February 2025).

4.    Defendant's promise is false.  In reality, Defendant aids a third party (Meta Systems, Inc., owner of Facebook and Instagram) to surveil every detail of its interactions with visitors to its Website, thereby allowing Meta to create detailed portraits of Website visitors' interests, needs, and desires and bombard them with advertising.

5.    In short, Defendant falsely promised Website visitors that it would protect their privacy, but then secretly monetized their personal information by enabling Meta to spy on those visitors, surveil their journey across the web, track their location and lifestyle habits, and bombard them with targeted advertising.  Rather than candidly disclose this arrangement, Defendant explicitly and implicitly assured Website visitors that their identities and privacy would be protected.  In short, Defendant lied.

6.     Plaintiff visited Defendant's website several times within the statute of limitations period.  Without Plaintiff's or class members' knowledge or consent, Defendant deployed Meta's de-anonymization process to identify Plaintiff using electronic impulses generated from Plaintiff's device, as further described herein. Defendant's installation of the Meta tracing process violates California's Trap and Trace Law, codified at California Penal Code § 638.51.

## II.    JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is at least minimal diversity because at least one Plaintiff and Defendant are citizens of different states. Indeed, based upon the information available to Plaintiff, there are believed to be at least 5,000 class members, each entitled to $5,000 in statutory damages, thus making the amount in controversy at least $25,000,0000 exclusive of interests and costs.  *See* Cal. Penal Code § 637.2(a)(1).

8.     Pursuant to 28 U.S.C. § 1391, venue is proper because a substantial part of the acts and events giving rise to the claims occurred in this District.

9.     Defendant is subject to jurisdiction under California's "long-arm" statute because the exercise of jurisdiction over Defendant is not "inconsistent with the Constitution of this state or the United States."  Indeed, Plaintiff is informed and believes and based thereon alleges that Defendant generates a minimum of eight percent of revenues from leads generated by its Website based upon interactions with Californians, such that the website "is the equivalent of a physical store in California."  Since this case involves illegal conduct emanating from Defendant's operation of its website targeting Californians, California courts can "properly exercise personal jurisdiction" over the Defendant in accordance with the Court of Appeal opinion in *Thurston v. Fairfield Collectibles of Georgia*, 53 Cal. App. 5th 1231, 1235 (2020).

**CLASS ACTION COMPLAINT**

## PARTIES

10.    Plaintiff is a citizen of California.  Plaintiff is also a consumer privacy advocate who works as a "tester" to ensure that companies abide by the privacy obligations imposed by California law.  As an individual who advances important public interests at the risk of vile personal attacks, Plaintiff should be "praised rather than vilified."  *See Murray v. GMAC Mortgage Corp*., 434 F.3d 948, 954 (7th Cir. 2006). Indeed, the Ninth Circuit recently made exceptionally clear that it is "necessary and desirable for committed individuals to bring serial litigation" to enforce and advance consumer protection statutes, and that Courts must not make any impermissible credibility or standing inferences against them.  *Langer v. Kiser*, 57 F.4th 1085, 1095 (9th Cir. 2023).

11.    Defendant is a vision insurance plan provider that does business in California.

12.    Defendant owns, operates, and/or controls the above-referenced Website.

## FACTUAL ALLEGATIONS

**Defendant's Website Spies on Visitors.**

13.    Defendant operates the Website. Defendant has installed on its Website a spyware pixel created by Meta in order to identify website visitors (the "Meta Spyware").

14.    The Meta Spyware acts via a process known as "fingerprinting." Put simply, the Meta Spyware collects as much data as it can about an otherwise anonymous visitor to the Website and matches it with existing data Meta has acquired and accumulated about hundreds of millions of Americans.

15.    The Meta Spyware gathers device and browser information, geographic information, referral tracking, and url tracking by running code or "scripts" on the Website to send user details to Meta.

16.    One leading defense law firm specializing in privacy litigation summarizes the Meta Pixel this way:

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10

***"The Meta Pixel is a piece of code embedded in the HTML code of a website. When a user visits the website, the Pixel sends Meta information about the user's actions on the website. The Pixel is customizable, allowing the website to track specific user characteristics by changing certain variables in the code. Some Pixel parameters allow Meta to link a user's online actions with their offline purchases in physical stores. . . .Think of the Pixel as a door installed in the website, with Meta on one side of the door and the user on the other. Meta can gather data and see how the user interacts with the website: if they enter their email, if they click on a link, if they add something to their cart. Meta and the website can use this data to better target ads.***"

11
12
13

*See* https://www.kslaw.com/news-and-insights/the-meta-pixel-an-open-door-to-sensitive-data-and-data-privacy-suits (last accessed February 2025).   The preceding summary is shown visually as follows:

14
15
16
17
18
19
20



21
22
23
24
25
26
27

17.    As shown by the image below identifying the Meta tracking scripts operating on Defendant's website, the Meta Spyware (1) begins to collect information the moment a user lands on the Website before any pop-up or cookie banner advises users of the invasion or seeks their consent; and (2) requests and transmits other identifying personal information to Meta that allows Meta to link a user's behavior on Defendant's website to the visitor's social media accounts:

28

**CLASS ACTION COMPLAINT**



**The Meta Spyware is a Trap and Trace Device.**

18.    California Penal Code § 638.50(c). California law defines a "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication."    California Penal Code § 638.50(c).

19.    The Meta pixel allows Defendant to link to a visitors Facebook account by placing a small piece of code on the website that tracks visitor activity and reports it to Meta, thereby allowing Meta and its platforms (like Facebook and Instagram) to identify and match those visitors to their Facebook and Instagram accounts, enabling Defendant to target them with ads based on their actions on the website.

20.    The Meta Spyware is a process to identify the source of electronic communication by capturing incoming electronic impulses and identifying dialing, routing, addressing, and signaling information generated by users, who are never

1  informed that the website is collaborating with the Chinese government to obtain their

2  phone number and other identifying information.

3      21.    The Meta Spyware is "reasonably likely" to identify the source of incoming

4  electronic impulses.  In fact, it is designed solely to meet this objective.

5      22.    Defendant did not obtain Plaintiff's express or implied consent to be

6  subjected to data sharing with Meta for the purposes of fingerprinting and de-

7  anonymization.

8      23.    CIPA imposes civil liability and statutory penalties for the installation of

9  trap and trace software without a court order. California Penal Code § 637.2; s*ee also*

10  *Shah v. Fandom, Inc.*, 2024 U.S. Dist. LEXIS 193032 (N.D. Cal. Oct. 21, 2024).

11      24.    Defendant did not obtain Plaintiff's or class members' express or implied

12  consent to be subjected to data sharing with Meta for the purposes of fingerprinting and

13  de-anonymization.

14  **CLASS ALLEGATIONS**

15      25.    Plaintiff brings this action individually and on behalf of all others similarly

16  situated (the "Class") defined as follows:

17      **All persons within the United States who during the statute of limitations**

18      **period: (1) visited Defendant's website; and (2) whose privacy was violated as**

19      **set forth above.**

20      26.    <u>NUMEROSITY</u>:  Plaintiff does not know the number of Class members, but

21  believes the number to be in the thousands, if not more.  The exact identities of Class

22  members may be ascertained by the records maintained by Defendant.

23      27.    <u>COMMONALITY</u>: Common questions of fact and law exist as to all Class

24  members, and predominate over any questions affecting only individual members of the

25  Class.  Such common legal and factual questions, which do not vary between Class

26  members, and which may be determined without reference to the individual

27  circumstances of any Class member, include but are not limited to the following:

28

a. Whether Defendant deployed software on its Website that constitutes a "trap and trace device" on Class members' browsers on their devices;

b. Whether Defendant violated CIPA based thereon;

c. Whether Plaintiff and Class members are entitled to statutory damages;

d. Whether Plaintiff and Class members are entitled to punitive damages;

e. Whether Class members are entitled to injunctive relief.

28.    <u>TYPICALITY</u>:  As a person who visited Defendant's Website and whose communications was recorded, intercepted, and eavesdropped upon without prior knowledge or consent, Plaintiff is asserting claims that are typical of the Class.

29.    <u>ADEQUACY</u>:  Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff has retained attorneys experienced in class action litigation.  All individuals with interests that are actually or potentially adverse to or in conflict with the class or whose inclusion would otherwise be improper are excluded.

30.    <u>SUPERIORITY</u>:  A class action is superior to other available methods of adjudication because individual litigation of the claims of all Class members is impracticable and inefficient.  Even if every Class member could afford individual litigation, the court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.

**<u>FIRST CAUSE OF ACTION</u>**

**CALIFORNIA INVASION OF PRIVACY ACT**

**PENAL CODE SECTION 638.51(a)**

31.    Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

32.    Section 638.51 of the Penal Code provides that it is illegal for any "person" to "install a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53."  (Cal. Penal Code § 638.51(a).)

33.    The PR/TT beacon is a "trap and trace device" because it is a "device or process" that "capture[d] the incoming electronic or other impulses that identify the

- 8 -

**CLASS ACTION COMPLAINT**

originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication."  (Cal. Penal Code § 638.50(c).)

34.    At all relevant times, Defendant knowingly installed the PR/TT beacon on Plaintiffs' browsers, and used the PR/TT beacon to collect Plaintiffs' IP addresses, and track Plaintiffs.

35.    The PR/TT beacon does not collect the content of Plaintiffs' electronic communications with the Website.  *In re Zynga Privacy Litig.,* 750 F.3d 1098, 1108 (9th Cir. 2014) ("IP addresses 'constitute addressing information and do not necessarily reveal any more about the underlying contents of communication than do phone numbers.'") (quotation omitted).

36.    Plaintiffs did not provide Plaintiffs' prior consent to Defendant's installation or use of the PR/TT beacon.

37.    Defendant did not obtain a court order to install or use the PR/TT beacon.

38.    Pursuant to section 637.2 of the California Penal Code, Plaintiffs have been injured by Defendant's violation of section 638.51(a) of the California Penal Code, and seek statutory damages of $5,000 for Defendant's violation of section 638.51(a). See Penal Code § 637.2(a)(1).

39.    By knowingly violating a criminal statute and accessing Plaintiffs' browsers to install tracking software without Plaintiffs' prior consent, Defendant acted with oppression and malice. As such, Defendant is liable for punitive damages pursuant to Civil Code section 3294.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief against Defendant:

1.    An order certifying the Class, naming Plaintiff as the representative of the Class, and naming Plaintiff's law firm as Class counsel;

2.    An order declaring Defendant's conduct violates CIPA;

**CLASS ACTION COMPLAINT**

3.    An order of judgment in favor of Plaintiff and the Class and against Defendant on the causes of action asserted herein;

4.    An order enjoining Defendant's conduct as alleged herein and any other injunctive relief that the Court finds proper;

5.    Statutory damages pursuant to CIPA;

6.    Punitive damages;

7.    Prejudgment interest;

8.    Reasonable attorneys' fees and costs; and

9.    All other relief that would be just and proper as a matter of law or equity, as determined by the Court.

Dated:  February 5, 2025                    PACIFIC TRIAL ATTORNEYS, APC


                                            By: */s/Scott J. Ferrell*_____
                                            Scott. J. Ferrell
                                            Attorneys for Plaintiff and the putative class

**CLASS ACTION COMPLAINT**